```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CONWAY COHALAN,                                                   :
                                                                  :
                              Plaintiff,                          :
                                                                  :
       -v-                                                        :
                                                                  :
GENIE INDUSTRIES, INC.,                                           :
                                                                  :
                              Defendant.                          :      10 Civ. 2415 (JMF)
                                                                  :
------------------------------------------------------------------X      OPINION AND ORDER
GENIE INDUSTRIES, INC.,                                           :
                                                                  :
                              Third-Party Plaintiff,              :
                                                                  :
       -v-                                                        :
                                                                  :
CHRISTIES INC.; CHRISTIE'S, INC.;                                 :
CHRISTIE'S INTERNATIONAL PLC,                                     :
                                                                  :
                              Third-Party Defendants.             :
                                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/1/2013

In March 2010, Plaintiff Conway Cohalan commenced this personal injury action against Defendant Genie Industries ("Genie"), seeking damages for on-the-job injuries he suffered when he fell approximately twenty feet from a personnel lift (the "lift"), which was manufactured by Genie. Genie impleaded third-party defendant Christie's, Inc. ("Christie's"), which was Cohalan's employer at the time, alleging that Christie's negligence was a contributing cause of Cohalan's injuries, and seeking contribution and/or indemnification.[1] After the close of

---

[1] Genie's Third-Party Complaint also lists Christies Inc. and Christie's International PLC as third-party defendants to this action. (Docket No. 15). On January 18, Christie's Inc. filed an answer on behalf of itself and Christies Inc. (Docket No. 22). As they have jointly filed all papers in this action, in this Opinion "Christie's" refers to both Christie's Inc. and Christies Inc.

discovery, Christie's moved for summary judgment under Federal Rule of Civil Procedure 56, contending that New York Workers' Compensation Law Section 11 ("Section 11") bars Genie's third-party claims against Christie's. (Docket No. 73). By the same motion, Christie's also moved to preclude the testimony of Plaintiff's vocational rehabilitation expert, Dorra Blacker, under Rule 702 of the Federal Rules of Evidence. (*Id.*). Both Genie and Plaintiff filed briefs in opposition to Christie's motion. (Docket Nos. 84 & 87). Genie also separately moved for sanctions against Christie's because it had destroyed the lift (Docket No. 71), and Plaintiff filed a brief in support of this motion (Docket No. 86). For the reasons set forth below, Christie's motion to exclude Plaintiff's expert's testimony is DENIED, its motion for summary judgment is DENIED, and Genie's motion for sanctions is DENIED in part.

## BACKGROUND

On November 12, 2007, while employed as an audiovisual technician at Christie's, Cohalan was working on a Genie-manufactured Model PLC-15P personnel lift that tipped over, causing Cohalan to fall twenty feet to the ground. Cohalan was hospitalized after the accident and received treatment for various injuries, including a "large left scalp soft tissue hematoma." (Shah Decl. Ex. K at 1). After approximately three weeks in the hospital, Cohalan was transferred to a rehabilitation center where he remained for an additional three months. (*See* Watkins Decl. Ex. Z). Since his release from the rehabilitation center on March 1, 2008, Cohalan has undergone additional periods of hospitalization and surgery, received various

---

Although Alak Shah filed a notice of appearance on behalf of Christies Inc., Christie's Inc., and Christie's International PLC on January 30, 2012 (Docket No. 49), in its Notice of Motion for Summary Judgment, Christie's stated that "Christie's International, PLC never appeared in this matter, but does not have any connection with the location of Plaintiff's accident or Plaintiff's employment with Christie's." (Docket No. 73). To date, Christie's International, PLC has not responded to Genie's Third-Party Complaint.

physical therapy treatments and outpatient care, and has met with numerous doctors regarding his injuries. (*See generally* Shah Decl. Ex. N at 3-6; Ex. I at 26).

Cohalan, who is currently sixty-four years old, filed his Complaint against Genie on March 17, 2010, asserting claims for negligent product design and manufacturing of the lift. (Docket No. 1). Genie filed its answer on April 21, 2010 (Docket No. 5), and a Third-Party Complaint against Christie's on December 10, 2010, seeking common law indemnification and/or contribution on the basis of Christie's negligence in the ownership, operation, maintenance, and control of the lift and the premises (Docket No. 15). Specifically, in its Third-Party Complaint, Genie alleges that prior to the date of the accident, Christie's was expressly advised that the lift was missing parts, was not in proper operating condition, and should be removed from service. Based on these allegations, Genie asserts claims against Christie's for negligence and intentional tort. (*Id.*).

Christie's denies these allegations and asserts that, as Cohalan's former employer, it is immune from liability because Cohalan did not suffer a "grave injury" as defined by New York Workers' Compensation Law Section 11. (Christie's Mem. Law Supp. Mot. Summ. J. 1). Under Section 11, Christie's can only be held liable if Cohalan suffered a "grave injury" rendering him "unemployable *in any capacity*." *Rubeis v. Aqua-Club*, 821 N.E.2d 530, 535 (N.Y. 2004). Christie's argues that "Plaintiff's injuries — as proven by his own medical records, his own neuropsychological expert, and the experts proffered by Christie's — simply do not meet the statutory criteria of severity to qualify as a 'Grave Injury.'" (Christie's Mem. Law Supp. Mot. Summ. J. 1). In support of its argument, Christie's has retained neuropsychology expert Dr. William Head and vocational rehabilitation expert Edmond Provder. Both Dr. Head and Provder opine that Cohalan has not suffered a grave injury, because he is capable of engaging in some

3

form of employment.  (Shah Decl. Ex. 0 at 9; Ex. P at 18-19).  In contrast, Plaintiff has retained orthopedic expert Dr. Gregory Charko, neuropsychology expert Dr. David M. Mahalick, and vocational rehabilitation expert Dorra Blacker.  Dr. Mahalick and Blacker both testified that Cohalan has suffered a "traumatic brain injury" that prevents him from being able to work in any capacity.  (*See* Shah Decl. Ex. I at 26; Ex. J at 224; Ex. L at 9).

## DISCUSSION

Christie's has moved for dismissal of the Third-Party Complaint on the ground that Cohalan did not suffer a grave injury under Section 11.  Christie's also seeks to exclude from evidence the expert testimony offered by Dorra Blacker.  Genie opposes Christie's motion for summary judgment, asserting that the conflicting expert opinions as to whether Cohalan sustained a "grave injury" create a genuine issue of material fact.  (Genie's Mem. Law Opp'n Mot. Summ. J. 5).  Because on a summary judgment motion a "district court properly considers only evidence that would be admissible at trial," *Nora Beverages v. Perrier Grp. of Am.*, 164 F.3d 736, 746 (2d Cir. 1998), a court may — and sometimes must — decide questions regarding the admissibility of evidence, including expert opinion evidence, on a motion for summary judgment, *see Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  In addition, as discussed below, one of Christie's arguments in support of summary judgment is that there is no material issue of disputed fact related to Plaintiff's ability to work — the central issue on which Blacker opines.  Accordingly, the Court will first address the admissibility of Blacker's opinion testimony before ruling on Christie's motion for summary judgment.

**A. Admissibility of Expert Testimony**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides, in relevant part as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the United States Supreme Court defined the "gatekeeping role" of the district courts with respect to expert testimony, declaring that "the Rules of Evidence especially Rule 702 — [ ] assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." A trial court should therefore admit expert testimony only where it is offered by a qualified expert and is relevant and reliable. *See generally id.* at 587-90; *see also Nosal v. Granite Park LLC*, 269 F.R.D. 284, 286 (S.D.N.Y. 2010). The Rule 702 inquiry, however, "is a flexible one," *Daubert*, 509 U.S. at 594, and a "liberal standard of admissibility" ought to be employed, *Nimely v. City of N.Y.*, 414 F.3d 381, 395-96 (2d Cir. 2005); *see also Nosal*, 269 F.R.D. at 287.

Here, Plaintiff retained Blacker as a vocational rehabilitation expert to offer expert testimony on the issue of whether Cohalan is employable in any capacity. Christie's does not contest Blacker's qualifications, and the Court finds that Blacker is qualified as an expert witness in the field of vocational rehabilitation, given her extensive credentials, including her education, experience, and general knowledge of the subject matter. *See, e.g.*, *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04 Civ. 7369 (LTS) (HBP), 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006) ("In assessing whether a witness can testify as an expert, courts have

5

liberally construed the expert qualification requirement.").[2] Instead, Christie's challenges Blacker's testimony on grounds that it is unreliable because it is not based on sufficient facts and data and because Blacker "failed to use any discernible methodology that is generally accepted in the field of vocational rehabilitation to arrive at her conclusions." (Christie's Mem. Law Supp. Mot. Summ. J. 4).

The focus of a court's reliability inquiry "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595. In *Daubert*, the Supreme Court listed four factors to guide district courts in assessing the reliability of expert testimony: (1) whether the expert's technique or theory can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential rate or error; and (4) whether the theory or technique is generally accepted by the relevant scientific community. *Id.* at 593-94. Yet given the "flexible" nature of the Rule 702 admissibility inquiry, *id.* at 594, "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the case, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). In other words, "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153.

---

[2]   Blacker received her bachelor's degree in psychology and her master's degree in rehabilitation counseling, both from Hunter College. (Shah Decl. Ex. L at 12). In addition to her extensive certifications in the field of vocational rehabilitation, she has nearly thirty years of professional experience as a vocational rehabilitation counselor. (*Id.* at 10-11). She has been employed by the Rusk Institute of Rehabilitation at the New York University Langone Medical Center since 1984 and in this capacity she has directly evaluated and counseled more than 8,000 patients to assess their vocational potential and employability. (Watkins Decl. Ex. X ¶ 3). Since 2008, she has been a clinical supervisor specializing in diagnostic vocational evaluations at the Rusk Institute. (Shah Decl. Ex. L at 11).

Here, Christie's contention that Blacker "utilized little, if any, methodology in arriving at her assessment of Mr. Cohalan" is unsupported by the record. (Christie's Mem. Law Supp. Mot. Summ. J. 23). As Blacker explained, in performing her evaluation of Cohalan, she "used the same widely accepted peer reviewed methodology and intellectual rigor" that she employs when working at the Rusk Institute. (Watkins Decl. Ex. X ¶ 9).[3] Applying this methodology, Blacker reviewed Cohalan's medical records from eleven different doctors and medical institutions, as well as his educational, vocational, and social background. (*Id.* ¶ 9). She reviewed Cohalan's deposition testimony and the testimony provided by his sisters, one of whom Cohalan has lived with since his accident. (*Id.* ¶ 13). Blacker also conducted an interview with Cohalan to assess the impact of his injuries on his current and future employment potential, during which she administered a standardized vocational intake and vocational assessment, as well as a transferability of skills analysis. (*Id.* ¶¶ 35-51). Based on the results of these tests and her overall review of Cohalan's file, Blacker concluded that, within a reasonable degree of professional certainty, Cohalan "is no longer employable in any capacity as a result of his traumatic brain injury and subsequent cognitive deficits." (*Id.* ¶ 61).

Despite the detailed evaluation Blacker performed, Christie's argues that Blacker's testimony lacks reliability because Blacker (1) did not assess Cohalan's ability to stand, walk,

---

[3] Specifically, under this methodology, Blacker reviews a patient's medical and psychological history and pertinent background information; and performs a standardized vocational intake, including an interview with the patient regarding his vocational background, educational background, social history, cognitive status, functional limitations and abilities, vocational goals, and economic situation. As appropriate, she performs a vocational assessment in which standardized diagnostic tests are administered. Under this methodology, if the patient is unable to return to his former position, Blacker performs a transferability of skills analysis based upon results of vocational assessment and identifies potential jobs that the patient is able to perform. She also facilitates employment efforts and follow-up services for the patient to help him maintain his job. As Blacker notes, counseling is ongoing throughout this process. (Pl.'s Mem. Law Opp'n Mot. Summ. J. 20).

lift, or bend; (2) "did not perform a transferability of skills analysis using any computer programs to see what potential jobs plaintiff is qualified to perform"; (3) did not "arrive at any type of worker profile for the plaintiff" and "limit[ed] her evaluation to only assessing plaintiff's skill level." (Christie's Mem. Law Supp. Mot. Summ. J. 19). Christie's further argues that Blacker's "limited analysis utilizing the Career Ability Placement Survey (CAPS) is flawed as only three of the eight tests were performed which provided an incomplete picture of plaintiff's abilities." (*Id.* at 20). Christie's further argues that Blacker did not know the dictionary of Occupational Titles number assigned to Plaintiff's occupation, and did not advise Plaintiff that "he should utilize the resources of the [Rusk Institute's] job placement program." (*Id.* ¶ 20).

These are not sufficient grounds on which to exclude Blacker's testimony. *See, e.g.*, *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 761 (3d Cir. 1994) ("[T]o avoid exclusion of his or her opinion, [the experts] did not have to conduct every possible test to assess whether his or her view was correct so long as he or she employed sufficient diagnostic techniques to have good grounds for his or her conclusion . . . ."); *In re Omeprazole Patent Litig.*, 490 F. Supp. 2d 381, 460 (S.D.N.Y. 2007) (holding that for an expert's testimony to be admissible, the expert is "not required to perform every possible test"), *aff'd*, 281 F. App'x 974 (2d Cir. 2008) (summary order), and 536 F.3d 1361 (Fed. Cir. 2008); *see also In re Benjumen*, 408 B.R. 9, 20 (Bankr. E.D.N.Y. 2009) (finding that an expert's testimony was not precluded as unreliable despite the expert's failure to "examine local employment conditions, assess other types of employment that might be available to the Plaintiff, and reference the U.S. Department of Labor's Dictionary of Occupational Titles").

Under the standard articulated by the Second Circuit, admission of Blacker's expert testimony is appropriate. Indeed, since *Daubert*, "the rejection of expert testimony is the

exception rather than the rule," Fed. R. Evid. 702 advisory committee's note, and the Second Circuit requires that courts assessing the reliability of expert testimony be mindful of the "presumption of admissibility of evidence." *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995). "Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith, or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Bacardi & Co. v. N.Y. Lighter Co., Inc.*, No. 97-CV-7140 JS VVP, 2000 WL 298915, at *2 (E.D.N.Y. Mar. 15, 2000) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)); *see also Amorgianos* v. *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (describing the "liberal admissibility standards of the federal rules" and explaining that "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible"); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [an expert's] credentials, faults in his use of different etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility of his testimony."). Under the circumstances, the proper remedy for any deficiencies in Blacker's testimony are "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[,] [which] are the traditional and appropriate means of attacking shaky but admissible evidence" — not exclusion of the evidence altogether. *Daubert*, 509 U.S. at 596.  Accordingly, Christie's motion to exclude the testimony of Blacker is denied.[4]

---

[4] In opposing Christie's motion for summary judgment, Plaintiff argues that "[t]he only evidence offered by Christie's in support of its claim that Conway Cohalan is employable in some capacity is pulled from unsworn hearsay expert reports and letters purported to be written by its experts Dr. William Head and Edmond Provder." (Pl.'s Mem. Law Opp'n Mot. Summ. J. 14). Because Christie's motion for summary judgment is denied, however, the Court need not

**B.  Summary Judgment**

Summary judgment is appropriate when the record demonstrates that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Summary judgment "is not favored in cases involving materially conflicting expert reports."  *Solorio v. Asplundh Tree Expert Co.*, 402 F. Supp. 2d 490, 497 (S.D.N.Y. 2005) (citing *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 79 (2d Cir. 2002) (concluding that the district court erred in granting summary judgment because conflicting medical reports concerning plaintiff's ability to return to work created a genuine issue of material fact)); *see also, e.g.*, *Hudson Riverkeeper Fund v. Atl. Richfield Co.*, 138 F. Supp. 2d 482, 490-91 (S.D.N.Y. 2001) ("In light of the disputes between the various experts, we find that genuine issues of material fact exist as to whether the [allegedly contaminated site] presents an imminent and substantial endangerment to health or the environment . . . .").  This is particularly true when the conflicting expert reports involve the question of the "the nature and extent of an alleged 'grave injury' under Section 11."  *Solorio*, 402 F. Supp. 2d at 497 (noting that conflicting expert

---

address the issue of whether the medical reports by Dr. Head (Shah Decl. Ex. N) and Provder (*id.* Ex. P) are admissible.

opinions on this question are "especially likely to preclude summary judgment"); *Mustafa v. Halkin Tool, Ltd.*, No. 00 Civ. 4851 (DGT), 2004 WL 2011384, at *10 (E.D.N.Y. Sept. 7, 2004) ("In this case, where there are conflicting expert opinions as to whether [the plaintiff] suffered 'permanent and total loss of use' of his left hand, 'grave injury' becomes a question of fact for the jury to decide.").

Section 11 provides that "[a]n employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer *unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury.'*" N.Y. Workers' Comp. Law § 11 (2004) (emphasis added). Included in the statute's list of qualifying "grave injuries" is "an acquired injury to the brain caused by an external physical force resulting in permanent total disability." *Id.* The term "permanent total disability" means "unemployable *in any capacity*." *Rubeis*, 821 N.E.2d at 535. Christie's argues that summary judgment is appropriate because Cohalan has not suffered such a "grave injury." (Christie's Mem. Law Supp. Mot. Summ. J. 9). But in light of Blacker's testimony, which is admissible for the reasons stated above, a jury could find that Cohalan suffered a grave injury, and accordingly summary judgment is not appropriate. *See Mustafa*, 2004 WL 2011384, at *10 ("Case law suggests that if there is a plausible case to be made for 'grave injury,' it becomes a question of fact for the jury to decide.").

Even without Blacker's testimony, summary judgment would be inappropriate, as Dr. Mahalick also testified that Cohalan suffered a "traumatic brain injury" that prevents him from employment in any capacity, creating a triable issue of fact. (*See* Shah Decl. Ex. J at 224). Christie's contends that the affidavit of Dr. Mahalick, submitted by Genie in connection with this

11

motion, contradicts his earlier deposition testimony and is therefore inadmissible. (Christie's Reply Mem. Law Supp. Mot. Summ. J. 4, 5, 7, 10-12). This argument, however, is unavailing. Although a declarant's affidavit contradicting his own prior deposition testimony should be disregarded on a motion for summary judgment, this principle does not apply if the later sworn statement does not actually contradict the prior testimony, but merely "amplifies or explains" it. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996); *see also Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000) (holding that where the deponent's responses were ambiguous, subsequent clarification by affidavit was permissible).

Here, Dr. Mahalick's post-motion affidavit does not contradict his prior deposition testimony. Specifically, during his deposition, Dr. Mahalick was asked whether Cohalan could perform part-time work at a toll-booth if he had unlimited time to make change for any given car. He responded yes, "if it were something extraordinarily limited, two hours, maybe three hours, but this guy is so pathetically slow and . . . ," at which point Christie's counsel cut him off and ended the deposition, stating numerous times "we are done." (Shah Decl. Ex. J at 239). In his affidavit, Dr. Mahalick clarified that his answer to the "painfully hypothetical question" at the deposition "does not in any way contradict [his] opinion that Mr. Cohalan is not capable of part-time or full-time employment in any capacity as a result of his traumatic brain injury and resultant cognitive deficits." (Watkins Decl. Ex. W ¶ 22). Although in his affidavit, Dr. Mahalick acknowledges that Cohalan "may be able to sit in a toll booth for an hour or two a day, a random day or two a week, provided he was permitted unlimited time to make change for each car at the booth," he concludes that Cohalan "lacks the processing speed, higher integrative thought functioning, and concentration necessary to handle this job, or any other job, on a part-time, full-time, or even a more limited basis." (*Id.*). Based upon the record, the Court finds Dr.

Mahalick's affidavit to be an amplification of his prior testimony and does not present contradictory opinions with regard to Cohalan's capacity for employment.  *See Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) (holding an affidavit clarifying "vague and inconclusive" prior testimony was admissible on summary judgment and created a "genuine factual issue").

It is Defendants' burden to show that there is no evidence that creates a genuine factual dispute as to whether Cohalan has suffered a "grave injury" within the meaning of Section 11. *See Harris*, 310 F.3d at 78 (noting that the moving party "bears the burden of establishing that no material fact exists as to whether she is totally disabled under the policy").  Drawing all inferences in favor of Genie and bearing in mind "the reluctance to take expert disputes away from the jury," *Solorio*, 402 F. Supp. 2d at 499, the Court concludes that Christie's has not met this burden.  Accordingly, Christie's motion for summary judgment is denied.[5]

## C.  Sanctions

Genie has moved the Court to sanction Christie's for destruction of the lift in October 2009, requesting that the Court strike Christie's answer on spoliation grounds.  In the alternative, Genie requests that the Court strike all affirmative defenses pleaded by Christie's, preclude Christie's from offering evidence in defense of the claims asserted against it, or instruct the jury that it may draw an adverse inference from Christie's destruction of the lift.  (Genie's Mem.

---

[5] In its opposition to Christie's motion for summary judgment, Genie argues that its intentional tort claim against Christie's is not barred by the exclusivity provision of the Worker's Compensation Law and, thus, even without a showing of grave injury, this claim survives. (Genie's Mem. Law Opp'n Mot. Summ. J. 18).  In its reply brief in support of its motion, Christie's argues that the intentional tort claim is "improperly pled and meritless" and should be dismissed *sua sponte* by the Court.  (Christie's Reply Br. Supp. Mot. Summ. J. 12-13).  Although Genie's intentional tort claim appears to be meritless, as there is no evidence in the record that Christie's engaged in conduct "with the desire to bring about the consequences of the act," *Acevedo v. Consol. Edison Co.*, 596 N.Y.S.2d 68, 71 (App. Div. 1st Dep't 1993), the Court need not, and does not, reach this issue at this time.  Further, "[a]rguments made for the first time in a reply brief need not be considered." *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005).

Supp. Mot. Sanctions 1).  Plaintiff has filed a memorandum in support of Genie's motion for sanctions.  (Docket No. 86).

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 435 (S.D.N.Y. 2010) (quoting *Byrnie v. Town of Cromwell, Bd. of Edu.*, 243 F.3d 93, 107 (2d Cir. 2001)) (internal quotation marks omitted).  "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)) (internal quotation marks omitted).  Where a party seeks sanctions based on the spoliation of evidence, it must establish: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the evidence was destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).  The obligation to preserve evidence arises when "a party reasonably anticipates litigation." *Orbit One Commc'ns, Inc.*, 271 F.R.D. at 436 (internal quotation marks omitted), but may be extinguished by giving the opposing party an "adequate and meaningful opportunity to inspect" the evidence, *Sterbenz v. Attina*, 205 F. Supp. 2d 65, 74 (E.D.N.Y. 2002).

Genie argues that Christie's was aware of its duty to preserve the lift by virtue of the preservation letter that Cohalan's former counsel, Anthony Gair, sent to Christie's in February 2008 (*see* Estevez-Sarkinen Aff. Ex. F at 7), and that Christie's remained under a duty to

14

preserve the lift for the statutory period of three years (*see id.* Ex. H).  Genie further argues that the "destruction of the lift has significantly hampered Genie's defense to plaintiff's claims and Genie's prosecution of its claims against Christie's."  (Genie's Mem. Law Supp. Mot. Sanctions 9).  In its opposition, Christie's argues that because Gair told Christie's that Cohalan would not pursue a products liability action, Christie's had no continuing duty to preserve the lift; that it did not act with a culpable state of mind; and that Genie is not prejudiced in either its defense of Plaintiff's claims or the prosecution of its third-party action due to the absence of the lift.  (Christie's Mem. Law Opp'n Mot. Sanctions 1).

The Court agrees with Christie's that there is no evidence that Christie's acted in bad faith in failing to preserve the lift.  Christie's secured the lift immediately after the accident.  It was inspected by an investigator from Christie's Workers Compensation carrier, who took 42 photographs of the lift, and was later inspected by Gair and his forensic photographer, who took an additional 123 photographs.[6]  Christie's did not destroy the lift until October 2009 — nearly two years after the accident.  Further, Genie and Plaintiff have myriad other evidence available to them to determine the condition of the lift, including the post-accident photographs of the lift, the surveillance video of the accident, and extensive deposition testimony of multiple witnesses regarding the use, operation and condition of the lift, which suggests that they were not significantly prejudiced by the destruction of the lift.  In light of that, the drastic remedy of striking either Christie's answer or its affirmative defenses is certainly unwarranted.

"In this circuit," however, "a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence."  *Richard Green (Fine Paintings) v. McClendon*, 262

---

[6]  The parties disagree as to the advice Christie's received from its insurer regarding how long it was required to preserve the lift.  They also disagree as to whether Gair instructed Christie's that it may dispose of the lift.  (*See* Estevez-Sarkinen Aff. ¶¶ 9-11 (Docket No. 62); Shah Decl. ¶¶ 13-17 (Docket No. 89)).

F.R.D. 284, 290 (S.D.N.Y. 2009) (quoting *Residential Funding*, 306 F.3d at 108). And here, there is evidence in the record that might support a finding of negligence on the part of Christie's. Nonetheless, the law is clear that appropriate sanctions should be tailored according to "'the prejudice suffered by the party seeking sanctions,'" and "the severity of the sanctions imposed should be congruent with the destroyer's degree of culpability." *Id.* at 291, 288 (citation omitted). "Ultimately, the determination whether to award sanctions for spoliation of evidence is a highly fact-specific inquiry." *Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 294 (S.D.N.Y. 2011).

At most, the circumstances in this case may warrant an adverse inference instruction at trial. The Court reserves judgment on whether such an adverse inference instruction is appropriate, however, as there are genuine issues of fact regarding the culpability of Christie's. For example, as noted above, the parties dispute the content of the 2008 communications between Gair and Christie's Risk Manager, Mary Sheridan, regarding Christie's obligation to preserve the lift. (*See* Shah Decl. ¶¶ 10, 13; Sheridan Decl. Ex. G ¶¶ 8-9; Estevez-Sarkinen Aff. ¶ 9; Estevez-Sarkinen Aff. Ex. E at 17-18). Further, at trial, the Court will be in a better position to assess what prejudice, if any, Genie suffered as a result of the lift's destruction — specifically, whether the photographs taken of the lift and the other evidence in the record are an adequate substitute. Accordingly, the Court defers the question of whether an adverse inference is appropriate until trial, at which point the Court will hold an evidentiary hearing if necessary.

## CONCLUSION

For the reasons set forth above, Defendants' motion to exclude Blacker's testimony and for summary judgment is DENIED. (Docket No. 73). Genie's motion for sanctions is DENIED in part. (Docket No. 71).

The parties are ORDERED to appear for a pretrial conference on **March 12, 2013**, at **4:15 p.m.**, in **Courtroom 1105** of the United States District Court for the Southern District of New York, Thurgood Marshall Courthouse, 40 Centre Street, New York, NY 10007.

It is further ORDERED that the parties shall submit a Joint Pretrial Order and all related pretrial filings, as set forth in the Court's Individual Rules and Practices for Civil Trials (available at http://nysd.uscourts.gov/judge/Furman), by **April 1, 2013**.

The Clerk of Court is directed to terminate Docket Nos. 71 and 73.

SO ORDERED.

Dated: March 1, 2013
       New York, New York

_____
JESSE M. FURMAN
United States District Judge